# Illinois Official Reports

## Supreme Court

***People v. Plank*, 2018 IL 122202**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN PLANK, Appellee. |
| Docket No. | 122202 |
| Filed | May 24, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Douglas County, the Hon. Richard L. Broch, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Eric M. Levin, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | J. Steven Beckett and Audrey C. Thompson, of Beckett & Webber, P.C., of Urbana, and Francis L. Thomas, of Tolono, for appellee. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

¶ 1 The Illinois Vehicle Code prohibits anyone with a revoked driver's license from driving a "motor vehicle." 625 ILCS 5/6-303(a) (West 2012). However, someone with a revoked license may still drive a "low-speed gas bicycle" without violating this statute. *Id.* § 1-146. The Vehicle Code defines "low-speed gas bicycle" as a "2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." *Id.* § 1-140.15.

¶ 2 When the State charged defendant John Plank with driving a motor vehicle with a revoked license, he claimed that the statute did not clearly tell him which vehicles he could and could not drive. Specifically he argued that the Vehicle Code's definition of "low-speed gas bicycle" was unconstitutionally vague in violation of the due process clauses of the United States and Illinois Constitutions. The Douglas County circuit court agreed with defendant, dismissed the charge against him, and declared section 1-140.15 unconstitutional on its face. The State appealed directly to this court. We find that the Vehicle Code's definition of "low-speed gas bicycle" satisfies the requirements of due process of law, and we reverse the circuit court's decision and remand for further proceedings.

¶ 3                                                  BACKGROUND

¶ 4 Officer Judson Wienke saw defendant John Plank riding a motorized bicycle down a Douglas County road at a speed of 26 miles per hour. Officer Wienke would later testify that he believed that "with motorized bikes they are allowed to go up to 19 miles per hour. Once they hit 20, they have to have a valid driver's license, insurance, and registration." He signaled to defendant to stop, and defendant pulled over. Defendant admitted to Officer Wienke that his license was revoked.

¶ 5 The State charged defendant with violating section 6-303(a) of the Vehicle Code. Generally, driving a motor vehicle on state highways with a revoked license is a Class A misdemeanor. However, the State alleged that defendant's license had been revoked previously following a conviction for driving under the influence of drugs or alcohol (DUI). After that DUI conviction, defendant was convicted for driving without a valid license in 2011, 2012, and 2013. This background led the State to increase the new charge to a Class 4 felony, requiring at least 180 days' incarceration. *Id.* § 6-303(d-3).

¶ 6 The circuit court did not conduct any evidentiary hearings, so Officer Wienke's testimony at the preliminary hearing provides the only factual record. He described defendant's bicycle as powered by "a weed-eater motor" and noted that it was not registered in Illinois. Although the bicycle had pedals in addition to its gasoline motor, Officer Wienke testified that he did not see defendant pedaling.

¶ 7 Defendant moved to dismiss the charge, arguing that the Vehicle Code's definition of "low-speed gas bicycle" was unconstitutionally vague. He claimed both that the definition fails to provide persons of ordinary intelligence with a reasonable opportunity to understand what is prohibited and that the definition encourages arbitrary and discriminatory enforcement. The circuit court agreed and dismissed the charge. The court noted that the definition refers to a "paved level surface" but no surface is perfectly level. The definition also relies on the

vehicle's maximum speed with a driver who weighs 170 pounds. The circuit court criticized this aspect of the statute, repeating defendant's claim that a police officer "would have to have a scale in their squad car in order to weigh the individual as soon as they pulled them over."

¶ 8    The State filed a motion to reconsider, which the circuit court denied. At the State's request, the court also made explicit findings under Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006). However, the court neglected to specify whether it found the statute unconstitutional as applied or on its face. The State appealed, and this court remanded to the circuit court so that it could clarify its ruling. The circuit court made its findings explicit, and it found section 1-140.15 unconstitutional on its face. This appeal followed.

¶ 9                                    ANALYSIS

¶ 10   When an Illinois circuit court finds a statute unconstitutional, Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) gives this court jurisdiction over the appeal. Whether a statute violates the United States or Illinois Constitution is a question of law, which this court reviews *de novo*. *People v. Madrigal*, 241 Ill. 2d 463, 466 (2011). Statutes are presumed to be constitutional, and "[t]o overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 23.

¶ 11   The State alleged that defendant violated section 6-303(a) of the Vehicle Code, which states that "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked *** shall be guilty of a Class A misdemeanor." 625 ILCS 5/6-303(a) (West 2012). The term "motor vehicle" includes "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and *low-speed gas bicycles*." (Emphasis added.) *Id.* § 1-146. Finally, "low-speed gas bicycle" is defined as a "2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." *Id.* § 1-140.15.

¶ 12   The circuit court agreed with defendant that this definition of "low-speed gas bicycle" was unconstitutionally vague and, thus, violated the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. A statutory provision can be too vague to satisfy the requirements of due process of law in two ways: first, the statute does not provide individuals of ordinary intelligence a reasonable opportunity to understand what conduct the law prohibits, or second, the statute does not provide law enforcement with reasonable standards to avoid arbitrary or discriminatory enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Bartlow v. Costigan*, 2014 IL 115152, ¶ 40. By allowing government actors to enforce only those statutes with definite content, the vagueness doctrine protects the rule of law from potential abuses of discretion. John C. Jeffries Jr., *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 212-19 (1985). However, "[i]f the plain language of the statute sets forth clearly perceived boundaries, the vagueness challenge fails, and our inquiry ends." *Bartlow*, 2014 IL 115152, ¶ 42.

¶ 13    We find that the circuit court erred when it found the definition unconstitutional. The statute both provides sufficient notice of what it prohibits to individuals of ordinary intelligence and supplies law enforcement officers with reasonable standards to prevent arbitrary enforcement.

¶ 14                                    A. The Driver's Weight

¶ 15    Initially the parties dispute whether a vehicle only qualifies as a "low-speed gas bicycle" when it is driven by someone who weighs 170 pounds. To reiterate, a "low-speed gas bicycle" is a "2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 625 ILCS 5/1-140.15 (West 2012).

¶ 16    Defendant argues that the definition only applies when the driver weighs exactly 170 pounds and that the statute is vague when drivers have different weights. He cites the statutory canon that courts must give effect to every provision of the statute and should not render any part of it superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009). Because the Vehicle Code limits the definition of "low-speed gas bicycle" to a vehicle "ridden by an operator who weighs 170 pounds," defendant argues that the court would violate this statutory canon if it read the definition to apply to all drivers, not solely those drivers who weigh 170 pounds. He refers to this as the "weight component" of the statute, and he notes that 40 other states have similar provisions in their vehicle codes that do not reference the driver's weight.

¶ 17    The State responds that the definition refers to the weight of a driver only to clarify how powerful a vehicle's engine must be for the vehicle to qualify as a "motor vehicle" and that an engine's capability is the same regardless of any particular driver's weight. To designate the relevant engine capability, the definition relies on the bicycle's maximum speed on a paved, level surface. The State cites the National Highway Traffic Safety Administration's (NHTSA) explanation that "the speed of a low-powered, two-wheeled vehicle may vary considerably depending on the weight of the driver." NHTSA, Notice of Draft Interpretation, 70 Fed. Reg. 34810, 34812 (June 15, 2005). According to the State, this explains why the relevant metric is the vehicle's "maximum speed on a paved level surface *** *while ridden by an operator who weighs 170 pounds*." (Emphasis added.) 625 ILCS 5/1-140.15 (West 2012).

¶ 18    The State's reading is more persuasive. Defendant would be correct if the Vehicle Code defined "low-speed gas bicycle" as a "2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, while ridden by an operator who weighs 170 pounds." However, the definition includes other phrases. The statute actually defines "low-speed gas bicycle" as a "2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, *whose maximum speed on a paved level surface, when powered solely by such a motor* while ridden by an operator who weighs 170 pounds, *is less than 20 miles per hour*." (Emphases added.) *Id.* As defendant suggests, the court must give effect to every phrase in the statute and should not render any part of it superfluous. These phrases mean that a defining characteristic of a low-speed gas bicycle is an engine that is incapable of transporting 170 pounds at 20 miles per hour without help from gravity or pedaling. A bicycle's motor will either have this capability or not, regardless of the weight of

any particular driver.

¶ 19                              B. Difficulty Understanding the Statute

¶ 20    Even though a vehicle's status as a "motor vehicle" or a "low-speed gas bicycle" is the same regardless of any particular driver's weight, defendant still insists that the Vehicle Code's definition of "low-speed gas bicycle" is vague because people of ordinary intelligence cannot determine which vehicles they can legally drive. Defendant states in his brief that "the sole reason [he] purchased the vehicle at issue in this case is because, as someone whose license was revoked, he knows he may not operate motor vehicles. [Defendant] bought his motorized bicycle to comply with the law by operating a vehicle that fell under one of the prescribed exceptions to a 'motor vehicle.' " His brief also references two newspaper articles that express similar frustrations. He contends that even when people want to comply with the law, they cannot easily determine how to do so.

¶ 21    The circuit court neither conducted an evidentiary hearing nor heard defendant testify, so none of this information is part of the record. Regardless, these allegations do not change this court's analysis. Even before he drove his new bicycle, defendant had an obligation to determine whether it fit the definition of "low-speed gas bicycle." The Vehicle Code specifies that each "motor vehicle *** when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this" statute. *Id.* § 3-402. It also requires that "[e]very owner of a vehicle subject to registration under this Code shall make application to the Secretary of State for the registration of such vehicle upon the appropriate form or forms furnished by the Secretary." *Id.* § 3-405. An application for vehicle registration must accompany an application for a certificate of title. *Id.* § 3-115(a). According to Officer Wienke's uncontested testimony, defendant did not register his vehicle. Instead of assuming his vehicle was exempt, defendant needed to diligently determine how to satisfy the Vehicle Code's requirements.

¶ 22    Although defendant rightly observes that every statute must "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" (internal quotation marks omitted) (*Bartlow*, 2014 IL 115152, ¶ 40), the vagueness doctrine does not invalidate every statute with a complicated standard of conduct. Instead, a statutory provision is unconstitutionally vague if it "provides no standard of conduct at all" (*People v. Fabing*, 143 Ill. 2d 48, 55 (1991) (finding a provision of the Illinois Dangerous Animals Act (Ill. Rev. Stat. 1987, ch. 8, ¶ 240 *et seq.*) that prohibited possessing a "life-threatening reptile" sufficiently clear to affirm the defendant's conviction for possessing two Burmese pythons and an alligator)). A statute is not proven vague when someone misunderstands its terms. Rather, courts fairly "require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952). The vagueness doctrine also does not require that a statute's application to a particular set of facts be readily apparent. The General Assembly may constitutionally require people to seek additional information before they engage in legally questionable behavior. *Bartlow*, 2014 IL 115152, ¶¶ 45-49.

¶ 23    When courts have struck down statutes under the vagueness doctrine, they have done so because the statutes depended on "wholly subjective judgments." (Internal quotation marks omitted.) *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). For example, the United

States Supreme Court found that a statute that prohibited grocery stores from charging "unjust or unreasonable rate[s]" was unconstitutionally vague. *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921); *Johnson v. United States*, 576 U.S. ___, ___, 135 S. Ct. 2551, 2561 (2015). Similarly, a criminal statute that punished "annoying" loitering denied the defendants due process of law. *Coates v. City of Cincinnati*, 402 U.S. 611 (1971). As the United States Supreme Court explained in *United States v. Williams*, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008).

¶ 24　　In contrast to statutes with subjective terms, statutes that define criminal conduct with mathematical precision routinely survive vagueness challenges before state supreme courts. In *People v. Falbe*, 189 Ill. 2d 635 (2000), this court upheld an enhanced penalty for selling cocaine within 1000 feet of a church. Whether the prohibited conduct occurred within this area was "merely a matter of measurement," so the statute was not vague. *Id.* at 641. The Washington Supreme Court reached the same conclusion when it found that an increased penalty for selling drugs near school bus stops was constitutional. *State v. Coria*, 839 P.2d 890 (Wash. 1992). Even if the defendant could not easily know whether he was within 1000 feet of a school bus stop, the standard of conduct was clear. *Id.* at 897. In *Burg v. Municipal Court*, 673 P.2d 732 (Cal. 1983), the Supreme Court of California upheld a statute that prohibited anyone with a blood-alcohol content over 0.10% from driving a motor vehicle. The defendant had argued that the statute was unconstitutionally vague because typical drivers have no way to test their own blood-alcohol level. The California court rejected this, finding that the statute was sufficiently clear to convey what it prohibited. Although this California decision does not bind Illinois courts, Illinois has a similar statute, and this court has not struck it down for vagueness. See, *e.g.*, 625 ILCS 5/11-501(a)(1) (West 2012).

¶ 25　　The Vehicle Code's definition of "low-speed gas bicycle" resembles the statutes in *Falbe* and *Burg* more than those in *L. Cohen Grocery Co.* and *Coats*. Unlike the unconstitutionally vague statutes in *L. Cohen Grocery Co.* and *Coats*, the Vehicle Code does not treat the same conduct differently based on each person's subjective evaluation of what is "annoying" or "unreasonable." Instead, a particular vehicle either is a "low-speed gas bicycle" for everyone or it is not for everyone, just as a driver's blood-alcohol content either is or is not over 0.10%. See *Burg*, 673 P.2d at 740-43. This is all that the vagueness doctrine requires.

¶ 26　　Defendant also argues that the statute is unconstitutionally vague because police officers cannot enforce it without resorting to arbitrary considerations. To determine whether a particular bicycle is a "motor vehicle," an officer would need to estimate the strength of the bicycle's motor by considering the driver's weight, the vehicle's speed on a paved, level surface, and whether the pedals function properly. However, defendant objects that officers cannot accurately make such determinations during a traffic stop. Although officers can estimate the driver's speed using a radar gun, they cannot determine to what extent that speed resulted from the gasoline engine, the driver's pedaling, or an inclined path.

¶ 27　　In support of this argument, defendant points to Officer Wienke's testimony at the preliminary hearing. Officer Wienke testified that "with motorized bikes [drivers] are allowed to go up to 19 miles per hour. Once they hit 20, they have to have a valid driver's license, insurance, and registration." Defendant suggests that Officer Wienke confused the Vehicle

Code's definition of "low-speed gas bicycle" with section 11-1516(b), which prohibits driving a low-speed gas bicycle over 20 miles per hour. 625 ILCS 5/11-1516(b) (West 2012). According to defendant's interpretation, Officer Wienke also failed to consider the driver's weight or pedaling. This echoes the circuit court's concern that the statute refers to the vehicle's speed on a paved, level surface but no surface is perfectly level. Defendant argues that the statute asks officers to make assessments that they cannot possibly make and that this authorizes arbitrary enforcement.

¶ 28 Even if defendant is correct that an officer might have difficulty estimating engine power, the vagueness doctrine does not require officers to precisely gather sufficient data to prove all the elements of a crime at the moment of citation or arrest. An officer need only have probable cause to believe the suspect has committed a crime. *People v. Grant*, 2013 IL 112734, ¶ 11. For example, if a driver swerves erratically, stumbles and sways when exiting the vehicle, and smells of alcohol, an officer has probable cause to suspect the driver of being intoxicated. *People v. Wear*, 229 Ill. 2d 545, 565 (2008). Looking for such behavior is a sensible way for the officer to evaluate the driver's mental state. If the officer cannot test the driver's blood-alcohol content, this inability to immediately gather precise data about the driver's state does not render the statute prohibiting driving while intoxicated unconstitutionally vague. Similarly, if an officer sees someone driving a motorized bicycle at a speed well over 20 miles per hour down a level road, those facts support the officer's initial conclusions that this vehicle's motor is powerful enough to move someone who weighs 170 pounds over a paved, level surface at a speed over 20 miles per hour and that the driver needs a valid license to operate this vehicle.

¶ 29 The vagueness doctrine is not implicated every time officers cannot conclusively determine at a glance whether someone has violated a particular statutory provision. Once the State has charged someone with violating section 6-303(a) of the Vehicle Code, the prosecutor still has the burden of proving the elements of the crime beyond a reasonable doubt—including that the bicycle that the defendant drove had a strong enough motor to qualify it as a "motor vehicle." *People v. Grandadam*, 2015 IL App (3d) 150111, ¶ 17. As far as the vagueness doctrine is concerned, the Vehicle Code's definition of "low-speed gas bicycle" provides both law enforcement and other law-abiding Illinoisans with definite criteria to determine if a certain vehicle is a "motor vehicle." It is not so ineffective that it "provides no standard of conduct at all." *Fabing*, 143 Ill. 2d at 55.

¶ 30                                    CONCLUSION

¶ 31 The Vehicle Code's definition of "low-speed gas bicycle" satisfies the requirements of due process of law. We reverse the circuit court's dismissal of the charge and remand for further proceedings.

¶ 32 Reversed and remanded.